**Sondra WALLIC, individually and as personal representative of the Estate of Frank Wallic, Jr., Plaintiff,**

v.

**OWENS–CORNING FIBERGLASS CORPORATION, a Delaware corporation, et al., Defendants.**

No. Civ.A. 98–K–875.

United States District Court, D. Colorado.

March 12, 1999.

T. Michael Kennedy, J. Conrad Metcalf, Williams & Trine, P.C., Boulder, CO, for plaintiff.

Robert M. Hamblett, Hassard Bonnington LLP, San Francisco, CA, Peggy S. Ball, Lapuyade Washington & Molk, LLC, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS

KANE, Senior District Judge.

On April 20, 1998, I ordered that the removal of this action to this court was improvident, remanded the case to the District Court, Twentieth Judicial District, State of Colorado and retained jurisdiction over Pittsburgh Corning Corporation and its attorneys in order to determine whether costs, sanctions and attorney fees should be assessed for the frivolous filing of the purported Notice of Removal and whether counsel for Pittsburgh Corning signing and filing of same had violated the Rules of this court by appearing herein without first having been admitted to the bar of this court.

Pending is Plaintiff's Motion for Attorney Fees and Costs Pursuant to 28 U.S.C. § 1447 and for Sanctions Pursuant to Fed. R.Civ .P. 11. Jurisdiction exists under 28 U.S.C. § 1447(c) which states: "An order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 322 (10th Cir.1997) (concluding defendant "had little or no basis for seeking removal of this action" and that the district court had not abused its discretion in awarding costs to plaintiff under § 1447(c)). I grant the motion.

### I. *Background.*

This is a state torts law products liability case for damages arising from the illness and subsequent death of Plaintiff Sondra Wallic's husband, Frank Wallic, Jr. who had developed mesothelioma, a form of cancer, allegedly as a result of his exposure to Defendants' products containing asbestos fibers. Plaintiff filed suit against a number of Defendants who had either manufactured asbestos containing products, or who supplied them to the work sites of Frank Wallic, Jr. during his career as a pipe insulator.[1]

1. Initially, both Frank Wallic, Jr. and Sondra Wollic were Plaintiffs in this case. Mr. Wallic has since died and Sondra Wollic is now the sole Plaintiff in an individual capacity and as representative of her late husband's estate.

On April 13, 1998, the case commenced trial in the District Court, Boulder County, Colorado before District Judge R. Bailin. By April 20th, 1998, the sixth day of trial, virtually the entire case had been tried with the exception of some documentary evidence proffers, motions at the close of evidence and summation. On that day, Pittsburgh Corning brought up the subject of removal for the first time by announcing to the state court its intent to file a notice of removal to the federal district court. Plaintiff's counsel, J. Conard Metcalf of Williams & Trine, P.C., Boulder, Colorado, advised trial counsel for Pittsburgh Corning, Robert M. Hamblett of Hassard Bonnington LLP, San Francisco, California, that it was his belief that Defendant Rio Grande, a Colorado corporation, was still a Defendant in the case and, although not present at trial, the corporation's presence destroyed diversity of citizenship between the parties. Notwithstanding this advice, Mr. Hamblett gave Judge Bailin oral notice before the noon break that the Notice of Removal was in the process of being filed in this court.

After Judge Bailin had left the courtroom, attorney T. Michael Kennedy, also of Williams & Trine, asked Mr. Hamblett why the Notice of Removal had not been filed on April 13, 1998, before commencement of trial, considering that the status of the parties had not changed in the interim. Mr. Hamblett replied: "I'm just doing what I'm told by my client." During the lunch break, Rio Grande's status as a party Defendant was verified in a telephone conversation between Cathy Wasson, legal assistant to J. Conard Metcalf, and Rio Grande's counsel, Elizabeth Silva.

Before commencement of the afternoon session, Mr. Kennedy advised Mr. Hamblett that removal was improper because diversity did not exist and because Pittsburgh Corning had submitted to state court jurisdiction. He also said he thought there was a high probability of the case being remanded and asked why Mr. Hamblett was persisting in removal. To this, Mr. Hamblett had no response other than that Pittsburgh Corning had the right to choose its forum. Mr. Kennedy then told Mr. Hamblett that if he persisted in the removal petition, Plaintiff would have no alternative but to pursue costs, fees and sanctions. Mr. Hamblett replied: "I expect you would."

In a separate conversation, while standing in the hallway outside the courtroom before the afternoon session commenced, Mr. Kennedy jokingly asked Mr. Hamblett what his Federal District Court, District of Colorado bar number was and if he were admitted to practice in this court. Mr. Hamblett replied "I don't have one." Shortly thereafter, the afternoon session commenced and Judge Bailin was presented with written notice of removal by Pittsburgh Corning and verification that same had been filed in this court. Judge Bailin suspended the trial until 1:30 p.m. the following day, and instructed counsel to be ready to proceed in the event that the case was remanded to the state court.

In the Notice of Removal under 28 U.S.C. § 1441(b) filed in this court, Pittsburgh Corning asserted it was the sole remaining Defendant in that Plaintiff's counsel had that day confirmed in open court that the Plaintiff had settled, dismissed or otherwise abandoned her claim against all other parties, including Colorado corporations, Defendants, Rio Grande Company, Inc., Riley Stoker Corporation, and Plateau Supply Company. As such, Pittsburgh Corning stated, jurisdiction existed under 28 U.S.C. § 1332 as the parties were citizens of different states and the amount in controversy exceeded $75,000. The notice of removal was signed by Robert M. Hamblett, Esq. of Hassard Bonnington LLP, San Francisco, California, Attorneys for Defendant Pittsburgh Corning Corporation.

On April 20, 1998, I requested Judge Bailin to provide me with the orders of dismissal which had been entered in the case. The judge furnished me with copies of three orders of dismissal, and noted her understanding that, although other motions to dismiss would be forthcoming, as

of that date eighteen Defendants had not been officially dismissed from the case. The remaining Defendants included three Colorado corporations, Rio Grande Company, Inc., Riley Stoker Corporation and Plateau Supply Company.

On April 20, 1998, the date of the purported removal, I issued a Memorandum Opinion and Order, noting that the state court continued to retain jurisdiction over the parties, unless and until it approved their dismissal. As such, this court did not have diversity jurisdiction over the case. I ordered the removal of the action improvident and remanded it forthwith to the state court. I retained jurisdiction over Pittsburgh Corning and its attorneys to determine whether costs, sanctions and attorney fees should be assessed for the frivolous filing and whether counsel's signing and filing the purported Notice of Removal had violated the rules of this court by appearing herein without first having been admitted to the bar of this court.

Plaintiff's counsel returned to their office at about 2:00 p.m. on April 20, 1998 to continue research for and writing of a motion to remand, which they hoped to file that afternoon. At about 4:00 p.m., when a "close to final" draft of the motion was about to be taken to Denver for filing in this court, Plaintiff's counsel received a telephone call from the District Court, Boulder County advising that the case had been remanded to that court.

Plaintiff's Motion for Attorney Fees and Costs Pursuant to 28 U.S.C. § 1447 and for Sanctions Pursuant to F.R.Civ.P. 11 followed. Plaintiff claims attorney fees and costs pursuant to 28 U.S.C. § 1447(c) in the amount of $3,433.57. In addition, pursuant to Fed.R.Civ.P. 11, Plaintiff seeks a sanction against Pittsburgh Corning "for its egregious and dilatory behavior and tactics" in the form of "a substantial monetary fine payable to the court registry" to serve as a deterrent to Pittsburgh Corning in the future.

I ordered Pittsburgh Corning, Robert M. Hamblett, Esq. and Hassard Bonnington LLP to respond separately in writing to the instant motion. I stated Mr. Hamblett could appear by counsel or *pro se* and that a corporate defendant, such as Pittsburgh Corning Corporation, and a limited liability organization, such as Hassard Bonnington LLP, could only appear by counsel admitted to the bar of this court. The order stipulated that, after the receipt of responses to Plaintiff's motion and a consolidated reply, I would set the matter for hearing and the taking of testimony.

Defendant Pittsburgh Corning filed an Opposition to Plaintiff's Motion for sanctions, asserting (1) sanctions are inappropriate as the petition for removal was reasonably based on Plaintiff's abandonment of its case against non-diverse Defendants and (2) the amount of claimed sanctions is unreasonable. Robert Hamblett Esq. and Hassard Bonnington LLP each filed a response, incorporating by reference the opposition filed by Pittsburgh Corning. They add only that, although the notice of removal should have been signed by local counsel, Ms. Ball, rather than by Mr. Hamblett, the latter had consulted with Ms. Ball before filing the notice and signature by Mr. Hamblett "did not result in any further inconvenience or expenses."

Plaintiff filed a consolidated reply, stating that evidence was presented at trial pertaining to Colorado Defendant Rio Grande, a distributor of asbestos products in the form of video deposition testimony of decedent Frank Wallic, Jr. and his product identification summary which was attached as an exhibit to the deposition. Rio Grande was represented by counsel at the deposition and Frank Wallic was cross-examined by her concerning his knowledge of the asbestos products distributed by Rio Grande. This, Plaintiff states, renders factually inaccurate Pittsburgh Corning's assertion that the claims against Rio Grande had been abandoned.

An evidentiary hearing on the motion was held on August 11, 1998. Plaintiff submitted four affidavits. The affidavits of co-counsel for Plaintiffs, Michael Kennedy and J. Conard Metcalf, verify the cir-

cumstances described above surrounding the removal and the costs and attorney fees incurred as a result of the filing of the Notice of Removal. The affidavits of Cynthia Olsen, a paralegal for Mr. Metcalf and Lisa P. Martin, an attorney and legal assistant to Mr. Kennedy, verify their time expenditures and costs incurred in preparation of the Petition for Remand. At the hearing Plaintiff called Catherine Ann Wasson, a paralegal at Williams and Trine, P.C., as a witness. Ms. Wasson, who was present at trial, also verified the circumstances and discussions enveloping the removal. The only question posed to Ms. Wasson in cross-examination was whether Rio Grande was ever present at the trial through counsel or any party appearing on its behalf, to which she replied in the negative. Plaintiff also called E. Gregory Martin Esq. as an expert witness who opined the attorney fees and costs claimed by Plaintiff were both reasonable and necessary.

Pittsburgh Corning, Robert Hamblett and Hassard Bonnington LLP offered no oral testimony. Mr. Hamblett argued orally, apparently on behalf of all three. At the conclusion of the hearing, I remarked the following were axiomatic: (1) a corporation may not appear *pro se* without representation by a member of the bar of this court; (2) abandonment of claims against a particular defendant requires a specific intent to abandon; and (3) attempting to remove a case after six days of trial is unsupportable. Having taken the matter under advisement, this opinion follows.

## II. *Merits.*

Plaintiff seeks attorney fees and costs pursuant to 28 U.S.C. § 1447(c) in the amount of $3,433.57 as well as a Fed. R.Civ.P. 11 sanction against Pittsburgh Corning "for its egregious and dilatory behavior and tactics" in the form of "a substantial monetary fine payable to the court registry" to serve as a deterrent to Pittsburgh Corning in the future. Section 1447 provides for procedure after removal from state court to federal district court and states in pertinent part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs, and any actual expenses, including attorney fees, incurred as a result of the removal.

28 U.S.C. § 1447(c).

Pittsburgh Corning argues sanctions are inappropriate because its petition for removal was reasonably based on Plaintiff's abandonment of her case against the non-diverse Defendants. It cites *Lewis v. Travelers Ins. Co.,* 749 F.Supp. 556 (S.D.N.Y.1990) and *Olsen v. Olsen,* 580 F.Supp. 1569, 1572 (N.D.Ind.1984) for the proposition that sanctions under § 1447 are only appropriate where there is no plausible support for removal under existing case law and it is obvious that the action is not removable.

■ In the Tenth Circuit, whether to award attorney fees and costs under § 1447(c) when a case is remanded to state court is within the sound discretion of the district court. See *Suder v. Blue Circle, Inc.,* 116 F.3d 1351, 1353 (10th Cir.1997). In *Suder,* the court rejected the argument that fees should not be awarded under § 1447(c) if there is a "colorable" basis for the removal. "The standard is not whether the basis for the removal was merely 'colorable;' the central inquiry is the 'propriety' of the removal, a standard much different than [sic] 'colorable.' A removal is proper only if it is legitimate." *Id.* (citation omitted). Stated otherwise, "the key factor is the propriety of [the] defendant's removal." 1447(c). See *Excell, Inc.,* 106 F.3d at 322. Nor is a finding that the removal was done in bad faith a prerequi-

**1190**

site to an award of attorney's fees and costs under § 1447(c). *Id.*

Neither in their briefs nor at the evidentiary hearing did Pittsburgh Corning, Mr. Hamblett, or Hassard Bonnington LLP offer any rebuttal of the facts set forth above and as verified by affidavits and testimony offered by Plaintiff. Thus, the facts are undisputed.

The notice of removal, signed by Mr. Hamblett, asserted Pittsburgh Corning was the sole remaining Defendant in that Plaintiff's counsel had that day confirmed that Plaintiff had "settled, dismissed or otherwise abandoned" her claims against all other parties. Accordingly, the notice stated, diversity jurisdiction existed under 28 U.S.C. § 1332 as the remaining parties were citizens of different states.

■ For several reasons, the removal in this case was not legitimate. First, serious issues of comity arise when a removal is attempted during a state court trial. Mr. Hamblett's stance that he was simply following his client's instructions poses his role to be one of errand boy for his client, rather than officer of the court. Regardless of a client's desire for a particular outcome, an attorney has an ethical responsibility to act only within proper bounds and to be honest with the court. Stated otherwise, the role of an ethical lawyer is "as an officer of the court and a key component of a system of justice, dedicated to a search for truth...." *Nix v. Whiteside,* 475 U.S. 157, 174, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986).

Second, by signing the removal notice, Mr. Hamblett represented to this court that to the best of his knowledge, after reasonable inquiry under the circumstances, the allegations and factual contentions therein were true. *See* Fed.R.Civ.P. 11. The notice of removal stated Plaintiff had settled, dismissed or abandoned its claim against Rio Grande and that there was diversity of citizenship between the remaining parties. Yet, it is undisputed that (1) evidence of Rio Grande's liability was presented at trial, and (2) both before and upon receiving confirmation from counsel for Rio Grande that her client was still a party Defendant, Plaintiff's counsel informed Mr. Hamblett of this fact and that complete diversity did not exist. Not only did Mr. Hamblett violate Rule 11, but he flagrantly violated a fundamental premise of our judicial system that "[a]ttorneys are officers of the court, and when they address a judge solemnly upon a matter before the court, their declarations are virtually made under oath." *Selsor v. Kaiser,* 81 F.3d 1492, 1501 (10th Cir.1996).

Third, Mr. Hamblett does not dispute having knowingly filed an appearance in this court without being a member of the bar of this court. His only comment in this regard in his response to the pending motion is his statement that the notice of removal should have been signed by local counsel, Ms. Ball, rather than himself, but that he consulted with Ms. Ball before filing the notice, and that therefore "the fact that the notice for removal was signed by Mr. Hamblett as opposed to Ms. Ball did not result in any further inconvenience or expenses." (Response of Robert M. Hamblett to Plaintiff's Motions for Sanctions at 1–2.) Such consultation compounds rather than mitigates the challenged conduct. The issue here is not one of convenience or expense but that, as one of its officers, a lawyer owes "complete candor and primary loyalty to the court" before which he practices. *See* Marvin E. Aspen, *Let Us Be 'Officers of the Court',* 83 A.B.A.J. 94, 95 (July 1997). This premise too was ignored.

As I have said: "Members of other bars have no right whatsoever to appear before this court and do so merely by leave of the court. A party appearing before this court has accordingly no right to be represented by such counsel. This contention hovers on the fringe of the contemptuous." *First Interstate Bank v. Estates Partnership,* 117 F.R.D. 683, 686 (D.Colo.1987). Here, the knowingly prohibited appearance by Mr. Hamblett before this court was particularly egregious since he purported to represent a corporation which, although not

permitted to do so, effectively appeared pro se.

In the circumstances, the conduct of Pittsburgh Corning and its counsel in filing the notice of removal shows a callous disregard of the judicial process. As I have stated, "all federal courts have the power ... to impose sanctions against recalcitrant lawyers and parties litigant." *Johnson v. Board of County Comm'rs,* 868 F.Supp. 1226, 1230–31 (D.Colo.1994). Moreover, a court "is obliged to take measures against any unethical conduct occurring in connection with any proceeding before it." *Id.*

### III. *Conclusion.*

■ For the aforesaid reasons, I award attorney fees and costs under 28 U.S.C. § 1447(c) for the improvident removal to Plaintiff and against Pittsburgh Corning The amount of the award is within my discretion. *See Shrader v. Legg Mason Wood Walker, Inc.,* 880 F.Supp. 366, 371 (E.D.Pa.1995). Plaintiff claims attorney fees and costs so incurred in the amount of $3,433.57. I accept the expert testimony that such fees and costs were both reasonable and necessary.

■ Moreover, Rule 11 sanctions must be levied if a reasonable attorney would not have filed the pleading because it was not well-grounded in fact, warranted by existing law or proposed for a proper purpose. *See Western Monetary Consultants, Inc. v. Allard* (*In re Western Monetary Consultants* ), 143 B.R. 780, 782–83 (D.Colo.1992). The Tenth Circuit has articulated the two tiers involved in awarding a Rule 11 sanction, a ruling that a pleading violates the rule and then imposition of an appropriate sanction. *Adamson v. Bowen,* 855 F.2d 668, 672 (10th Cir. 1988).

■ I find the notice of removal violated Rule 11. Generally, Rule 11 sanctions involve paying the excess costs, expenses' and attorney fees reasonably incurred, *Western Monetary Consultants, Inc.,* 143 B.R. at 782, and are "limited to what is sufficient to deter repetition of such conduct or comparable conduct

by others similarly situated," *Olcott v. Delaware Flood Co.,* 76 F.3d 1538, 1554 n. 14 (10th Cir.1996). Pursuant to Rule 11, I award the attorney fees and costs incurred by Plaintiff in filing the instant motion against both Robert M. Hamblett and Hassard Bonnington, LLP, including the costs of appearance at the evidentiary hearing on August 11, 1998.

Attorney Hamblett's conduct in filing the notice of removal and knowingly appearing without being admitted to the bar of this court flouted the court's rules and authority. A judge is constrained by Canon 3 of the Code of Conduct for the United States Judges to initiate appropriate action when he or she becomes aware of the likelihood of unprofessional conduct by a lawyer. In my view, the publication of this memorandum opinion constitutes sufficient appropriate action. Accordingly,

IT IS ORDERED THAT Plaintiff's Motion for Attorney Fees and Costs Pursuant to 28 U.S.C. § 1447 and for Sanctions Pursuant to Fed.R.Civ .P. 11 is GRANTED;

IT IS FURTHER ORDERED THAT attorney fees and costs are awarded under 28 U.S.C. § 1447(c) to Plaintiff and against Pittsburgh Corning Corporation for the improvident removal in the amount of $3,433.57;

IT IS FURTHER ORDERED THAT, pursuant to Fed.R.Civ.P. 11, the attorney fees and costs incurred by Plaintiff in filing the instant motion, including the costs of appearance at the evidentiary hearing on August 11, 1998, are awarded against both Robert M. Hamblett Esq. and Hassard Bonnington, LLP;

IT IS FURTHER ORDERED THAT, on or before March 26, 1999 Plaintiff shall file a verified itemization of costs and expenses, including attorney fees necessarily incurred and separately stated in connection with her motions for sanctions granted herein. Robert M. Hamblett Esq. and Hassard Bonnington, LLP may file counter affidavits on or before April 9, 1999 and, if an evidentiary hearing is required,

one will be set on an expedited basis and I will award additional attorney fees and costs to the prevailing party occasioned by that hearing.